Morse *et al.* v. Lehigh & W. Coal Co.

*(Circuit Court, S. D. New York. October 15, 1888 )*

DEMURRAGE—COAL ORDERS.
> Libelants offered a schooner to defendants' agent to load, whereupon the agent filled up a "coal order" to one of defendants' coal pockets, which libelants accepted, nothing being said about chartering the vessel. *Held,* that the order was incorporated in the contract, and defendants were relieved from liability for failure to furnish a load by a clause to that effect in the order.

In Admiralty. On appeal from district court.

Libel for demurrage by Benjamin W. Morse and others against the Lehigh & Wilkesbarre Coal Company. Decree for respondent, and libelants appeal.

*Geo. A. Black,* for appellants.

*Henry S. Ward,* for appellee.

LACOMBE, J. A "coal order," such as the one now before the court, was considered in *Rackett* v. *Stickney*, 27 Fed. Rep. 878. It was there held that, when delivered by one of the parties, and accepted by the other, as the result of verbal negotiations, it is conclusively presumed that such acceptance is an assent to its terms; but also that, when an independent contract has been concluded verbally between the parties, assent to its modification will not be implied from the acceptance by one party of an order directed by the other party to his own agent, and which is to be delivered to the agent, and retained by him. Inasmuch as the document now under consideration is precisely such an order, the question whether or not the respondent is by the second clause of its indorsement relieved from liability for failure to furnish a load depends upon the determination of the further question whether or not an independent contract was concluded before the "order" was given. The libelants' broker, Van Cleaf, testifies that he called upon Wilder, the shipping clerk of the respondents, about January 15, 1886, and asked if they could charter a schooner of about 1,300 tons, then at Warren, R. I., for Boston, or any port east. Wilder said that he thought he could, and in answer to a further inquiry offered $1.50 a ton for a voyage from Port Johnson to Mystic wharf, Boston. Van Cleaf asked time to telephone to his principals, which was granted. He did so, and, a satisfactory answer being received, at once came back from the telephone room and told Wilder that libelants accepted that charter, to which Wilder replied, "All right." Immediately thereafter Wilder filled up the order to the respondents' agent at Port Johnson, inclosed it in an envelope, gummed but not sealed, and directed to such agent, and delivered it to Van Cleaf. If this version of the interview is correct it would seem that a complete agreement of charter was made between the parties when Wilder assented to the libelants' acceptance of his offer; and the subsequent order to respondents' own agent would not, under the decision above referred to, be operative to relieve them from their obligation to load the vessel with reasonable promptness upon her presenting herself at Port Johnson. Wilder's statement of the conversation, however, is somewhat different. He says that Van Cleaf offered the schooner Charles E. Balch to load, and that he (Wilder) said he would give him an order to one of the respondents' coal pockets; and thereupon filled up the order and handed it to Van Cleaf, who took it and went out, nothing being said about chartering the vessel. If this version is correct, the order itself was incorporated in the contract, and respondents' only obligation was to conform to its terms. The learned district judge has evidently accepted Wilder's statement as the more credible. As he saw both witnesses, and could best judge of the relative value of their testimony, his finding will not be disturbed. Decree affirmed, with costs.